Thank you, and welcome, everyone, to the Ninth Circuit on the last day of argument for this week, for this panel. We have some cases that are submitted this morning. I won't mention those, so they're submitted without argument, and they'll be submitted as of today. We have three cases for argument today, and the first one is Sandler v. Modernizing Medicine. Is that who we've got sitting here at counsel's table? All right, make sure we got the right one. They're all arbitration cases, I think. Ms. Sanders, go ahead and approach the bench. Let us know your name for the record, and then how much time you'd like to reserve for rebuttal. Thank you, Your Honor. My name is Leslie Sanders. I'm here representing the appellant in this case, and I would like to reserve three minutes for rebuttal. May it please the Court. Modernizing Medicine will also be referred to as ModMed, so you'll hear references to ModMed. You'll see them through the brief. It's one and the same. Your Honors, we are here this morning primarily related to a delegation clause in the arbitration provision in the contract, and there's no dispute that the parties agreed that the arbitrator would arbitrate arbitrability. That's not in dispute. It's a reference to JAMS, and that's the JAMS procedures, so that's not disputed. What is in dispute is whether the severability clause, which is elsewhere in the agreement, creates ambiguity, and that ambiguity, if it exists, would create confusion over whether the arbitrator or the court may determine arbitrability. It's our position, as is clear in the brief, that arbitrability is delegated to the arbitrator. There's a bit of a logic question, is there not? You can't have severability until you have a decision on the delegation. That's correct, and so that's – the bulk of our brief and the bulk of our argument is about the arbitrability, because you're right. Beyond – if we don't get past that threshold issue, you never reach it. That's correct. The only point of raising the severability at this point is simply because that's the place where both the district court and the appellee indicate there's – that ambiguity is created, so that's really the only purpose of referencing it at this threshold issue. Counsel, how do you get around the California Court of Appeal decisions? Denison, Baker, they seem pretty on point in saying that a severability clause that references a court negates the clarity of a delegation. Your Honor, there are – first of all, let's address Denison, because I think that's the threshold case that's dependent. There is a distinction in Denison that is very important. In Denison, the reference in the case here, our provision here in the severability provision refers to a court or another body of competent jurisdiction. But you don't have that argument available for Baker, right? Because Baker does refer to a court or an arbitrator. That's correct, Your Honor. But if we look at Mohammed, which is cited, if you look at the federal case Mohammed, and interestingly, the way in which our district court here applied Mohammed in Redfin is what's, I think, of most interest in this entire case, because Mohammed dealt with different provisions. So there was an arbitration provision that was broad, much like ours, but there was also a venue provision that referred to where cases would be heard that seemed to be contradictory if everything was going to be arbitrated. But what the court said in Mohammed is that the location, a venue, doesn't negate a broad arbitration provision because any number of things could end up in court, even the enforcement of an arbitration provision. I guess, counsel, that raises the question, which law is controlling here, federal law or state law? Because Baker seems closer on the facts, right? It deals with the severability clause. The Mohammed case deals with the venue clause. So Baker is closer, but that raises the question, is Baker even binding here? It's a state law case, or does federal law control? Your Honor, federal law controls because it's the Federal Arbitration Act that is an issue here. So Mohammed and the cases under Mohammed, the federal cases under Mohammed, would be controlling. And in the Redfin case, it didn't cite directly to Mohammed, but it cited to the cases that Mohammed cited. And it concluded that, and it was about a severability provision. And because that severability provision referenced something other than an arbitrator, the same district court found that that did not negate the arbitration, the arbitrability. And the reason is because even in our agreement, it's a broad arbitration provision that covers most things. However, there are certain things that are delegated to the court, injunctive relief for the employer, but then also the employee is not prohibited from going to an agency. For example, the Federal Trade Commission, the NLRB. Those are both agencies that at the time of this agreement would have been interested in the provisions, the restrictive covenants in the arbitration provision. So this is not a case involving restrictive covenants. No, it's not. It's not, Your Honor. It's just an example of those. That's really though. Restrictive covenants is the only place where either party would have a reason to go outside of arbitration. The employer for injunction and the employee, if they wanted to, if she wanted to go to an administrative agency, perhaps to challenge the restrictive covenant or even the EEOC for discrimination claim. Can I return to the question of whether federal law or state law governs here? Yes. Because under general contract principles, when we are as a court, even as a federal court, interpreting contract between the parties, we generally look to state law to determine what the party's intended. Yes. And if that is right, then my hands are bound under Baker. Denison, I think I can distinguish. Yes. But Baker, I seem stuck. But then you've got Brennan, a Ninth Circuit case, which appears to be applying federal law in determining how one should interpret the meaning of the contract. So help me out here, counsel. Is it the general principles of state law that apply to interpretation, or is it federal law that helps me decide whether something has been clearly and unmistakably delegated to the arbitrator? Thank you, Your Honor. I understand your question. So it's certainly terms, basic interpretation of contract, the classic core interpretation of contract is delegated to the state law. That is correct. But when looking at the arbitration provision, certainly the Federal Arbitration Act would say that this provision in and of itself is not violative of the law. So it's a combination. If we're looking at basic contract interpretation principles, certainly state law is applicable. But when we look at the application of the broader picture, which is arbitration, is arbitration conscionable? Is arbitration itself appropriate in this case? Then federal law does apply. I hope that answers the court's question. And back to Baker. In this case that's before the court, there is a broad agreement. It's not just an arbitration provision. It's an agreement addressing multiple things related to employment. When you see one of the cases that is cited or any of the cases that are cited to support the position that relate only to arbitration, that makes a difference. Because in those cases, if there's a severability provision in an exclusively arbitration provision that relates to a court, that is confusing and that does create ambiguity. But here, while the restrictive covenants are not at issue here, those restrictive covenants are important because this agreement deals with more than just arbitration of employment disputes. If you look at the total picture of this provision, again of this particular agreement, you'll see restrictive covenants, you'll see intellectual property protections, and you'll see arbitration of any employment dispute. There's no question that there are disputes encompassed within this agreement that a court could determine. And if a court would determine those issues, such as injunction, or an agency would determine, such as enforceability of a restrictive covenant, then if an agency or a court would determine those issues, that's when the severability provision matters. The severability provision doesn't negate the clear instruction under JAMS, again, no dispute, that the agreement itself refers to arbitrability determination under JAMS, which is relegated to the arbitrator. So as an initial, as a threshold issue, the court should not have made the determination as to arbitrability. That should have been designated for the arbitrator itself. Counsel, did the court reach the question of whether the delegation clause itself was unconscionable? Yes. So, well, no. No, Your Honor. The delegation clause itself, it is, whether it's unconscionable, I think you could say is woven within the unconscionability determination that the court reached. It basically reached four different, or looked at four provisions that it found unconscionable. Now, again, we would argue that wasn't the court's job in this case, but looking at each one of those, you can see there's error in those decisions as well. Before we get there, counsel, did your friend on the other side argue that the delegation clause specifically was unconscionable, or was the argument only about the lack of a clear and unmistakable delegation? Your Honor, I don't want to say, because I don't know as I stand in front of the court. I know what the court did, and the court did not raise that. That is true. I don't believe that was raised by the appellee, but it wasn't raised by the court. That I know. So the court, first of all, in the unconscionable determination, the first issue that it raised was the parties, and it effectively said that the parties were not equal. In other words, really, the non-parties that were referenced were not equal. That misses the point of employment claims. If you look at the, because remember, this provision is limited to employment claims. Again, a distinction that we'll get to as we go through the unconscionability, particularly with the Cook case, but this is limited to claims related to Ms. Sandler's employment, or termination from employment. So to suggest that because ModMed includes companies related to ModMed, but the employee is limited to not only ModMed, she can't sue ModMed, but she also can't sue employees or agents of ModMed. The court found that somehow that was inequitable, but what the court did not explain or did not address is the fact that in employment claims, you necessarily have differences in who the parties would be. If you're an individual employee bringing an employment claim, then obviously, you could bring that claim against your employer, and sometimes, some situations, there's individual liability for— But counsel, you concede, though, that if the third party, so not the ModMed party, but an affiliate or a third party to ModMed sues your client, that can't go to arbitration, right? No. No, Your Honor. That would have to go to arbitration because ModMed and its affiliates is bound by arbitration. Yes. Okay. Right. Anyone that's defined as ModMed, which would mean its parents, its subs, its affiliates are ModMed, and they're all bound by arbitration. Just as the employee is bound, if she's going to bring an employment claim, regardless if it's against ModMed or a manager, that also is bound to arbitration. Even though the third parties didn't sign the arbitration agreement? That's correct, Your Honor, because it's the scope of the provision. The scope of the provision is about employment claims, and so now there is a difference because let's say that Ms. Sandler had a workers' comp claim. That's accepted. That obviously would not have to be arbitrated because it specifically says she may go to an agency. So she could go to a workers' comp board. She could go to any administrative agency. She's not bound to arbitration in those circumstances, but she is bound to arbitration of claims. So the arbitration provision is related to claims, not parties. If she wanted to sue someone at ModMed because she purchased the ModMed software and it didn't work, then obviously that's not arbitrable because that's not an employment claim. So to find that the different definitions of the parties is somehow unbalanced is ignoring the fact that it relates to the nature of the claim, which is employment claims. I want to make sure that you got one minute left. You know, you're hoping to reserve three, but. Appreciate that. You have one minute left of your three. Of my three? Yeah. Perhaps I should stop. You probably should. Okay. But the point is, we do not believe that those provisions that were found unconscionable are unconscionable. Thank you. Yeah, you'll have a minute. Okay. Thank you so much. Thank you. Good morning, Your Honors. May it please the Court. My name is Jenna Renho on behalf of the appellee, Kara Sandler. Can you hear me okay? Yes. All right. So order of operations are going to be the same as she was going through, starting with this delegation issue, the gateway issue of arbitrability. Now, there's a presumption that courts and not arbitrators will decide arbitrability. To delegate arbitrability requires clear and unmistakable intent to do so, and this is a heightened standard. Counsel, what do we do with the fact that the agreement specifically incorporates the jams, rules, and procedures for employment claims? Yes. That's a pretty clear showing of the intent of the parties to have arbitrators decide this case. So we did not dispute that the jams, rules incorporate, that Brennan's going to apply there. But where we went was that the severability clause creates the ambiguity and confusion. I'm sticking with my logical A plus B, then C, A being the decision of whether or not the contract is actually enforceable. And doesn't the agreement contain a provision saying that any disputes related to the formation of the contract have to be submitted to the arbitrator for resolution? So we looked at it as a whole, right? The entire employment agreement. Not under my analysis. You got to get A first, then you go to B, and then we come, hopefully, to the resolution at C. So where we went with it was that because the arbitration provision is part and parcel of a larger employment agreement where the severability clause is in line with the arbitration provision, Doesn't it have to do with the entire formation of the contract, the employment agreement, including the enforceability of the arbitration provision? You're saying the delegation provision has to do with the entire employment agreement? I would read it as only applying to the arbitration provision itself. You're, in essence, challenging the legitimacy of the underlying employment agreement, are you not? Because of all of the unconscionability with that flow throughout, yes, correct. So why isn't that covered by the provision in the arbitration clause that says any disputes with regard to the formation of the contract go to the arbitrator? Why is the, I'm sorry, can you rephrase for me? I'm not clear about that. The district court, I think, may have gone off the rails when it looked at the severability clause in order to answer the delegation clause. But there's no ambiguity as I read this contract. The language is pretty clear that the arbitrator basically gets to decide everything, not the court. I think that when you look at the different examples that we showed as well, there were severability clauses that were not necessarily within the arbitration provision itself. And I think under standard California law, and I believe there was a recent California appellate court case, which I am blanking on right now. But when you have all of these agreements that were signed at the same time, and in this one, it's just one agreement, you have to read everything in context. But it's an agreement that specifically looks to the Federal Arbitration Act that's signed to it. And then it also cites the California. Along with the procedures of the California Arbitration Act. And the JAMS employment. And the JAMS employment rules. And so I say you cannot seclude just the reference to the JAMS rules to get to the delegation clause without looking at the entire agreement altogether, including the severability clause. Because on one hand, you have. But again, maybe I'm wrong in my step one, step two, step three analysis. But I don't see where we get to the severability clause at all, unless we find that there's some kind of a problem with regard to who decides step one. Is it the arbitrator or a court? And I think that given the severability clause within the entire agreement altogether causes the ambiguity. Because on one hand, you're reading through an arbitration provision that is embedded within an employment agreement. But a severability clause, as I understand it, let's take a typical statute. Congress often includes a severability clause when it enacts a multi-section statute, does it not? And that severability clause is intended to address a situation where down the road a court invalidates one of the sections of the act. It's to make clear that we don't want the rest of all the remaining sections to be thrown out with the bathwater. You understand what I'm saying? I think, but from my view, you can't segregate the arbitration provision in the delegation agreement away from the severance clause. But in my hypothetical, you never get to the severability question until the decision maker in my hypothetical accord declares that one of the provisions of the act is, let's say, unconstitutional or unenforceable for some reason. Then we look to the severability clause to ask whether or not the rest of the act remains standing. Why shouldn't that same logic apply to the enforcement of an employment contract that contains an arbitration provision? Because I think they are meant to all be read together under general California contract law. And I understand what you're saying is that once you get to the arbitration provision, you're then going to look to the delegation clause and say that the arbitrator decides. But I think under the California contract law, you have to look at it all together. And the severance clause does cause an ambiguity in all of these appellate... Even if we do look to the severability clause, what in the severability clause conflicts with the delegation clause? So the JAMS rules, let me pull them out specifically, state on one hand that issues such as, quote, validity are going to go to the arbitrator. And on the other hand, the severability clause states that a court may decide the issues of things like... Or a competent body. Or other body of competent jurisdiction. So why doesn't or other body of competent jurisdiction include an arbitral panel? It may include an arbitral panel, but there are California appellate court cases that say that even when it's this or, either or, or a may, a court may or another court of competent jurisdiction may, it still creates an ambiguity. But we're not bound by those decisions, are we? The California appellate court... Yes, we are. To the extent it conflicts with Federal Arbitration Act, which has a preference for arbitration, why shouldn't we look to other body of competent jurisdiction to conclude that it includes the arbitral? One to your point, Judge Tong, the state law generally applies here, but also specifically in this employment agreement, there's a provision for California law to apply. But I'm suggesting that to the extent there may be a conflict between substantive California law and the Federal Arbitration Act's preference for enforcement of arbitration provisions, that the federal law would preempt or control if to the extent there's a conflict. I'm sorry, can you rephrase that for me? Yeah, I'm not following here. The problem is it's a very broad provision that purports to incorporate both specifically calls out the Federal Arbitration Act and the California arbitration statutes. And the JAMS rules and procedures for employment dispute resolution. And the agreement itself has a specific governing law provision. I think you'd agree with me, there is some tension in substantive California law on enforcement of arbitration agreements and federal common law on enforcement of arbitration agreements. California has some cases that are still, as I read them, reflect the same hostility towards arbitration that prompted Congress in 1925 to enact the Federal Arbitration Act. I mean, a hundred years later, we're still seeing that tension, are we not? This case is a perfect illustration of it. I think that our one, yes, I think our California public court cases are going to govern here, regardless of being- Even over federal law? You can't mean that. On this specific issue, this direct issue, because here we have not only are we bringing in the California Arbitration Act, but the contract itself is governed by California law. So if we, so just to try to narrow it down, I don't think, I think we probably all agree that both California and federal law apply here, right, and generally on this contract. And generally that's not going to be a problem because there's not going to be a conflict. I think the questions you're getting asked are, what do you do if there's a conflict, and specifically a conflict about this particular issue? And I think your answer keeps being that, well, we just apply California law because you're pointing to the fact that the contract says California law, but it also says federal law. So the question, the specific question, or the particular question is, what do we do if there's a conflict between the two? I think Judge Tallman was asking you, do you agree there's a conflict? But I'm just going to say, you don't have to agree to that. But can you assume for a second that there's a conflict? Assume that we think that there's a conflict between what the Federal Arbitration Act says to do in this circumstance and what California law says. If you assume that, you keep saying, well, you got to go with state law. And I don't, but I haven't heard from you why, other than pointing out the state law is referenced, but so is federal law. So it's a specific issue of if there's a conflict here. If you will assume for a second that there's a conflict, why wouldn't we apply the Federal Arbitration Acts over state law? It seems like we would, preemption. I'm not asking you to agree there's a conflict. I'm just saying if you assume, because if we think so, we have to figure out what to do with that. From my perspective here, if there is a conflict in interpretation, we are going to look at general state contract law that's going to apply to resolve that. And not, that will trump the FAA. I think if I was in your shoes, I would answer, well, the FAA incorporates state law as long as there's general principles of, but it doesn't feel like that here. It feels like these California state decisions seem, I mean, that would be, I think your answer, but it feels like the state court decisions are sort of anti-arbitration. They don't make a lot of sense because you have this provision. They're reading some provision about severability that refers to not just courts, but some other, but also other bodies. And then they're reading it to knock this provision out, even though to knock out the delegation clause, if I don't have to defer those decisions, that seems completely wrong. Yeah, it just doesn't seem right to me. So why would I privilege those over federal law? I think that what the California appellate courts have tried to do is really hone in on this aspect of, it's a heightened standard that requires a clear and unmistakable intent. And so when you're looking at- But nobody just said, we have other cases to say the JAMS provisions do that. They do, but then again, we're falling back on the severability clause causing this conflict. And regardless of it saying court or- Arbitrators, if you read arbitrators into the second part of it. Well, if you read it into it, correct. But it also says- It's capacious enough to do that. That is one way of reading it. There are two alternatives, right? Court or court of competent jurisdiction. And the reference to the court, and this was in a few other of the appellate court cases as well. Just the reference to it, now you have multiple ways of reasonably reading the interpretation of this contract. And in that situation, when there are multiple ways to read the language, it causes ambiguity. And when you have ambiguity, that cannot meet the heightened standard of clear and unmistakable. And that's where- Is your position that other body of competent jurisdiction means an appellate court? So we have court or appellate court? No, they didn't define what other court of competent jurisdiction means. Do you agree that it is capacious enough to include an arbitral panel? It could, but the district court pointed out that if they wanted that, they could have written that. In order to not be ambiguous, you would have to say, that language would have to say court or arbitrator, I think is what your argument becomes. Or remove court. Remove court. If you don't have the word court in there, it doesn't cause an ambiguity. Okay, but when I say A plus B, and you say, well, the only way B means this is what B says is, you know, if B is broad, is if you remove A, that just doesn't, that's not logically correct. If it's A or B, I'm sorry, not A or B, you don't have to remove A to make B mean something. And the California courts have disagreed with that because they say that just the reference to it itself does create this conflict, this ambiguity, because you can read it in multiple different ways now. If you wanted to read it in a way, the straightforward way that they would like, which is the arbitrator is going to decide arbitrability. And even on severance issues, the arbitrator is going to decide they could have written that. Well, counsel on the other side did also mention that the employment agreement carves out certain disputes from arbitration, right? Namely breaches of restrictive covenants. So there is a role for the court to play. Potentially a court could reach the severability issue. So the contract already accounts for that possibility. But this case does not involve a breach of restrictive covenants, right? It does not. But the carve-outs that are in there, we contend are unconscionable. They're one-sided carve-outs for claims that typically an employer is going to make. You're putting the cart before the horse because that question, some of us believe, should go to the arbitrator. We have to decide that question first, the delegability question. So it's no answer for you to say, well, those provisions are unconscionable. I would say, well, that's a question for the arbitrator. Is there a question in there? I'm sorry, I don't have an answer on that. All right. Well, I think we're down to the end of time. It has been a helpful discussion. I'll let you sum up or something if you have any. You know, the sum up is really what is submitted in the papers, that MoDMED has asked us here or is asking the court to look past California appellate law to extend Mohamed the way that the district courts, a few of the district courts have, which is saying that a venue clause, which in that case made sense, right? You had an arbitration agreement that had some arbitration opt-outs. It had a class action waiver that was carved out of the delegation clause. It said, this is where the cases should be filed if you need to go to court. That made sense. It caused no conflict. Any conflict was, I think it was artificial is what they said. Here, you don't have that. You have two conflicting statements about enforceability, about validity, about interpretation of the clauses, and that under California appellate law that is enough and should be followed here to take delegation, put delegation, the issues of arbitrability back with the district court. All right, counsel. Well, thank you very much. Appreciate your argument. And I think you have close to a minute left or something like that. I guess you have a minute left. Thank you. The issue, which was articulated, obviously, by this court and in the briefs, is you have federal cases that follow Muhammad. You have state cases that are in one of two categories. Some of the state cases relate only to arbitration provisions. If it's only an arbitration agreement, then obviously language that indicates it could go to someone other than an arbitrator could create ambiguity. That's not the case here. Here we have a contained arbitration provision. Under the Federal Arbitration Act, that arbitration provision is enforceable. Counsel, you don't have a federal case that addresses the presence of a severability clause, right? Muhammad is the closest case you have. Well, Redfin, which is the U.S. district case, that does interpret Muhammad. And it actually doesn't cite to Muhammad, but it cites to the other cases in Muhammad. And it is a severability provision. And it's the same district court, interestingly, but it does address it. And it does find that it does not negate the arbitrability delegation. All right. Well, thank you, counsel. Any other questions from colleagues? All right. Well, thank you both for your argument. It was a helpful dialogue. We'll move on to the next case.
judges: TALLMAN, VANDYKE, TUNG